UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| CARRIE ANN GULA, | : | |
| :--- | :--- | :--- |
| Plaintiff | : | CIVIL ACTION NO. 3:14-2210 |
| | : | |
| v. | : | (JUDGE MANNION) |
| | : | |
| FRANK NOONAN, | : | |
| et al., | : | |
| Defendants | : | |
| | : | |

# MEMORANDUM

This is a civil rights action brought pursuant to 42 U.S.C. §1983, Title VII of the Civil Rights Act, and the Pennsylvania Human Relations Act ("PHRA"), by plaintiff, Carrie Ann Gula ("Gula"), in which she alleges violations of her constitutional rights arising out of her employment with the Pennsylvania State Police ("PSP") and an alleged assault incident between Gula and her boyfriend on August 1, 2012.

Presently before the court is the partial motion for summary judgment on Count II of plaintiff Gula's amended complaint, (Doc. 19), filed by defendants PSP Trooper Lisa Brogan ("Brogan") and Lieutenant Richard Krawetz ("Krawetz"), pursuant to Fed. R. Civ. Pro. 56, (Doc. 28).

Based upon the following discussion, the partial motion for summary judgment of Brogan and Krawetz regarding Count II of plaintiff's amended complaint will be **DENIED**.

## I. FACTUAL BACKGROUND

On August 2, 2012, Gula reported to PSP that she was assaulted by her boyfriend, Eric Thomas, on August 1, 2012. After Brogan and Krawetz conducted an investigation, the PSP found that there was probable cause to arrest Gula for false reports to law enforcement officials and unsworn falsification to authorities. During the investigation, Thomas alleged that Gula had unlawfully accessed his online computer account which lead to a second investigation by Krawetz and the filing of charges against Gula related to unlawful use of a computer and computer trespass crimes. The case was turned over to the Luzerne County District Attorney's Office which determined that criminal charges against Gula were warranted based on both investigations. On December 13, 2012, Gula was arrested. Subsequently, she had a preliminary hearing and the charges against her were bound over to the Luzerne County Court of Common Pleas for criminal trial. After her trial was concluded in March 2014, Gula was found not guilty of all charges.

## II. PROCEDURAL HISTORY

On November 19, 2014, Gula filed her original complaint under §1983, Title VII and the PHRA. (Doc. 1). She is currently proceeding on her amended complaint which was filed on August 29, 2016. (Doc. 19). The plaintiff's amended complaint is comprised of eight counts. The claims against the remaining defendants are: (1) First Amendment retaliation claim and

2

Fourteenth Amendment equal protection claim based on her sex, against the individual defendants[1] in violation of 42 U.S.C. §1983; (2) malicious prosecution in violation of the Fourth Amendment and §1983 against Krawetz, and Brogan; (3) sex discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, against PSP; (4) sex discrimination claims against all defendants under the PHRA, 43 PA. STAT. §951, *et seq.*; (5) hostile work environment claim based on sex under Title VII against PSP; (6) hostile work environment claim based on sex against all defendants under the PHRA; (7) retaliation claim under Title VII against PSP; and (8) a retaliation claim against all defendants under the PHRA.

On March 22, 2017, Brogan and Krawetz filed their partial motion for summary judgment regarding plaintiff's Fourth Amendment claim of malicious prosecution in Count II of her amended complaint. (Doc. 28). They simultaneously filed their statement of facts with exhibits and a brief in support. (Doc. 29, Doc. 30, Docs. 37-63). The plaintiff filed her brief in opposition to Brogan and Krawetz's motion and her response to their statement of facts on May 10, 2017. (Doc. 84, Doc. 87). Plaintiff filed exhibits in support of her brief. (Docs. 76-83). Brogan and Krawetz filed a reply brief on June 7, 2017. (Doc. 93). Their motion is now ripe.

This court has jurisdiction over this action pursuant to 28 U.S.C. §§1331

---

[1]The remaining individual defendants are Krawetz, Brogan, Dougalas, Hoke, and O'Hara.

and 1343. The court can exercise pendent jurisdiction over the state law claims under 28 U.S.C. §1337. Venue is proper in this district.

## III. MATERIAL FACTS[2]

Gula is employed as a trooper with the PSP and in August of 2012, she was stationed in Troop N, at the Fern Ridge Barracks in Monroe County, PA. On August 2, 2012, Gula reported to the PSP that she was assaulted by her boyfriend, Eric Thomas, on August 1, 2012, in his house in Luzerne County, PA., while she was wearing her uniform. The Criminal Investigation Unit at Troop P, PSP Wyoming, in Luzerne County, was assigned to investigate the alleged domestic assault incident since it occurred in that county. Gula was directed to report to Krawetz at PSP Wyoming. Brogan was directed by Krawetz to investigate Gula's assault allegations. As part of the investigation, Brogan instructed Gula to make a written statement on August 2, 2012. At the completion of the investigation, Brogan prepared an Incident Report. (Doc. 40 at 59-65). Krawetz then prepared his own report. (Id. at 66-68).

---

[2] The material facts are derived from defendants' statement of material facts, from plaintiff's responses thereto as well as the exhibits submitted by the parties. Also, the court limits its discussion to the material facts pertaining to plaintiff's malicious prosecution claim against Brogan and Krawetz. The court has omitted any legal conclusions from the material facts.

For purposes of defendants' summary judgment motion, the court views the facts in the light most favorable to plaintiff. *See* Hampden Real Estate, Inc. v. Metropolitan Management Group, Inc., 142 Fed.Appx. 600, 602 (3d Cir. 2005).

4

Brogan and Krawetz determined that Gula's domestic violence allegations were "unfounded" due to inconsistencies, such as Gula had no visible injuries. However, Gula described non-visible injuries, including a headache and sore neck. They also believed that Gula's allegations were "unfounded" since there was no property damage in Thomas' house. Consequently, they concluded the criminal investigation into Gula's alleged assault incident. (Doc. 40).

Krawetz then initiated a criminal investigation into Gula for the crime of False Reports regarding her assault allegations against Thomas. During the course of this investigation, Thomas reported that Gula had "illegally accessed his 'My Verizon' online account" and he "provided evidence during the course of that investigation that indicated [Gula] had stolen various notes belonging to [him] that contained login information for a number of his online accounts." (Id.).

Thus, on August 8, 2012, Krawetz commenced a computer crimes investigation, in addition to the false report investigation, regarding Gula. (Doc. 40 at 76), According to the August 8, 2012 Incident Report:

> THOMAS received six notifications from Verizon indicating that the password on his Verizon Account had been changed. THOMAS related that at no time did he authorize any changes to his password on his account. THOMAS stated he did not and he never gave anyone permission to access his account. It can be inferred from this information that an unknown individual had accessed his Verizon account without authorization.

Upon conclusion of the investigations, the PSP and its officials

5

determined that Gula should be charged with making false statements to law enforcement officials and for computer trespass crimes. On November 13, 2012, Krawetz referred the case to the Luzerne County District Attorney's Office and, he met with the DA, and an Assistant DA and provided them with a copy of his investigation. He requested that a prosecutorial decision regarding Gula be made.

On December 4, 2012, Krawetz indicated that he met with the DA and that the DA recommended four felony computer charges and three misdemeanor charges relating to false reports be filed against Gula. The basis of the "false report" that Gula allegedly made was her verbal "report [of] an incident where she alleged that she was the victim, and she implicated another in that incident." The basis of Krawetz's charges against Gula for unlawful use of a computer and related offenses was Thomas' claim that Gula had unlawfully accessed his online "My Verizon" account and claim that Gula changed his password.

On December 12, 2012, Gula was suspended by the PSP without pay and her suspension continued for a year and a half while she was waiting for her criminal trial. She was also court-martialed by the PSP.

The DA approved of the charges and, Krawetz filed the criminal complaint against Gula and signed the affidavit of probable cause in support of the charges on December 13, 2012. Also, on this day, Krawetz obtained a felony arrest warrant for Gula from Magisterial District Judge Joseph J.

Carmody. (Doc. 81-6, Doc. 81-7).

Further, on December 13, 2012, Sean Jennings, PSP Fern Ridge Station Commander, was directed to transport Gula in a PSP car from the Fern Ridge barracks, where she was stationed, to the PSP Hazleton barracks. PSP Captain Edward Hoke, Troop N Commander, then detained Gula in his office in the PSP Hazelton barracks.

After he obtained the arrest warrant on December 13, 2012, Krawetz went to PSP Hazleton with Corporal Stephen Turinski and Brogan. Gula, who was still detained in Hoke's office, was then taken into custody at about 1:00 p.m. and, arrested by Krawetz in the presence of Hoke, Turinski and Brogan. Krawetz read Gula the charges and informed her of her *Miranda* warnings. Gula then signed a PSP Rights Warning and Waiver form in which she acknowledged that she received the stated warnings. Specifically, Gula was charged with the following crimes: Unlawful Use of Computer; Computer Trespass; Criminal Use of Communication Facility; False Report-Falsely Incriminate Another; False Reports–Reported Offense Did Not Occur; and, Unsworn Falsification to Authorities. (Doc. 81-7, Doc. 55-1).

During her arrest, Gula was physically touched, searched, and patted down in Hoke's office by Brogan. In addition to her arrest, Gula was served a PSP suspension notice by Hoke. Gula was then ordered to surrender her firearm and badge, and she was required by the PSP to "report at specified times and places for any proceedings of an administrative nature in which you

are involved." She was also ordered to cease contact with Thomas.

Subsequently, Krawetz handcuffed Gula in Hoke's office and put her in a PSP car. While still handcuffed, Brogan and Krawetz transported Gula to PSP Wyoming barracks and processed her, which included taking her fingerprints. After she was processed, Gula was asked at 2:34 p.m. whether she wanted to discuss the investigation and she declined. Krawetz, Brogan and Turinski then drove Gula for a preliminary arraignment before Judge Carmody in West Pittston. They arrived at 2:48 p.m. Gula was given unsecured bail in the amount of $7,500 and released December 13, 2012.[3]

Gula was taken into custody when she was arrested at about 1:00 p.m. on December 13, 2012, and she was finally released from PSP custody at about 2:50 p.m. (Doc. 81-7). As such, she was detained for about one hour and 50 minutes from the time of her arrest until her arraignment was completed.

On March 27, 2013, Gula had her preliminary hearing, which she was required to attend by virtue of her bail. (Doc. 81-8). The criminal charges were bound over to county court for trial.

A criminal Information was filed against Gula charging her with the

---

[3]As the Third Circuit noted in Black v. Montgomery Cty., 835 F.3d 358, 363 n. 3 (3d Cir. 2016), "[r]elease on unsecured bail bond means '[r]elease conditioned upon the defendant's written agreement to be liable for a fixed sum of money if he or she fails to appear as required or fails to comply with the conditions of the bail bond. No money or other form of security is deposited.'" (citing Pa.R.Crim.P. 524(C)(3)).

8

stated seven offenses on May 30, 2013. Gula had her formal arraignment on May 31, 2013. (Doc. 55-1). She waived arraignment and pled not guilty to all charges. (Doc. 81-8 at 32).

Gula's criminal trial commenced on March 17, 2014. (Doc. 81-12). Prior to jury selection, the Assistant District Attorney withdrew Count 1, Unlawful Use of Computer and Count 3, Computer Trespass. (Doc. 81-13). The jury deliberated for about forty minutes and found Gula not guilty of all charges.

After she was acquitted, Gula was placed on restricted duty by the PSP and she was charged administratively with false statements. She was again suspended without pay and court-martialed. She successfully pursued a claim against the PSP through arbitration and, she was subsequently restored to her position with the PSP.

## III. STANDARDS OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is

material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Casualty & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249 ; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v.*

Zenith Radio, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

"The motion for summary judgment requires Plaintiff to present evidence that there does exist a genuine issue of material fact, and Plaintiff may not rely solely on the pleadings." Isajewicz v. Bucks County Dept. Of Communications, 851 F.Supp. 161, 165 (E.D.Pa. 1994) (citing Celotex, 477 U.S. at 322).

### B. Section 1983

To state a claim under section 1983, a plaintiff must meet two threshold requirements. She must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, she was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). If a defendant fails to act under color of state law when engaged in the alleged misconduct, a civil rights claim under section 1983 fails as a matter of jurisdiction, Polk Cnty. v. Dodson, 454

U.S. 312, 315 (1981), and there is no need to determine whether a federal right has been violated. Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior.*" Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). *See also* Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (citing Rode). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

## IV. DISCUSSION

Defendants Brogan and Krawetz move for partial summary judgment with respect to Count II of Gula's amended complaint, namely, her malicious prosecution claim under the Fourth Amendment and under §1983. Brogan and Krawetz argue that they are entitled to summary judgment on Gula's malicious prosecution claim because she did not suffer a seizure or deprivation of liberty as the result of a legal proceeding.

Gula argues that she was taken into custody and detained after defendants arrested her, and that her seizure continued thereafter. As such, she states that she suffered a deprivation of liberty which was sufficient for purposes of her malicious prosecution claim under §1983.

It is well-settled that "[t]o prove malicious prosecution [under §1983 when the claim is under the Fourth Amendment] ... a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003); Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009); Piazza v. Lakkis, 2012 WL 2007112, *7 (M.D.Pa. June 5, 2012) (citation omitted). "[A] claim for malicious prosecution 'permits damages for confinement imposed pursuant to legal process.'" Piazza v. Lakkis, 2012 WL 2007112, *8 (citations omitted). Further, "a claim for malicious prosecution seeks to remedy 'the deprivation of liberty accompanying prosecution, not prosecution itself.'" Id. (citations omitted). In order for Gula to prevail on her malicious prosecution claim under §1983, she must satisfy each of the above stated elements. Kossler v. Crisanti, 564 F.3d at 186; Ward v. Noonan, 147 F.Supp.3d 262, 281 (M.D.Pa. 2015) ("If Plaintiffs have not proffered evidence sufficient to create a triable issue of fact as to all five prongs, their malicious prosecution claim must fail as a matter of law.") (citations omitted).

There is also no dispute that Gula was acquitted of all charges filed against her after a jury trial. (Doc. 55-1). Since "the circumstances-both the

offenses as stated in the statute and the underlying facts of the case-indicate that the judgment as a whole" reflects Gula's innocence of the stated charges, then Gula has established the favorable termination element. *See* <u>Kossler v. Crisanti, 564 F.3d at 188</u>. Indeed, Gula has shown that the criminal proceedings terminated in her favor. *See* <u>Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002)</u>.

Brogan and Krawetz argue that Gula cannot make out the fifth element required for a malicious prosecution claim. Hence, the issue at hand is whether Gula was sufficiently seized by Brogan and Krawetz when she was taken into custody, arrested and detained. Brogan and Krawetz contend that the evidence shows "Gula did not suffer a sufficient deprivation of liberty as a consequence of a legal proceeding" and that "Gula's arrest [alone] is insufficient to constitute a seizure for purposes of a §1983 malicious prosecution claim because it occurred prior to her arraignment." (Doc. 30 at 8). Following her arrest on December 13, 2012, defendants state that there are no allegations of any restrictions that were imposed on Gula. Specifically, defendants argue that "[t]he record reflects that [Gula] was released on $7,500 unsecured bond on December 13, 2012", and that "Gula fails to allege that she was required to post bail, required to report to Pretrial Services, or was subjected to any travel restrictions pending her criminal proceedings." They state that even though Gula was required to attend court hearings, "there is no evidence that she was under any restrictions during that ensuing

period of time and attending court proceedings does not constitute a seizure for purposes of the Fourth Amendment." (Id.).

In Ward, 147 F.Supp.3d at 282, the court explained the fifth element necessary to establish a malicious prosecution claim as follows:

> When a malicious prosecution claim is brought under the Fourth Amendment, "the plaintiff [must have] suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007). This fifth element distinguishes Fourth Amendment malicious prosecution claims from Pennsylvania common law malicious prosecution. See Collins v. Jones, 2015 WL 790055 *4 n. 10 (E.D.Pa. February 24, 2015). "Pretrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure." DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005) (no seizure resulted where plaintiffs were issued only a summons and did not have to post bail). In Gallo v. City of Philadelphia, 161 F.3d 217 (3d Cir. 1998), the plaintiff was seized when he was required to post $10,000 bond, attend all court hearings, contact pretrial services weekly and was prohibited from traveling outside of a two state area. In Johnson, a seizure was found where the plaintiff was detained for approximately two days prior to making bail, and was also required to return in six weeks for a hearing. 477 F.3d 75.

Brogan and Krawetz argue that Gula has fails to present any evidence to show that she was seized for Fourth Amendment purposes, and that they are entitled to summary judgment on her malicious prosecution claim. They maintain that "*DiBella* is directly on point" and that, "as in *DiBella*, the [ ] plaintiff did not post bail, was free to travel, and was not required to report to Pretrial Services." (Doc. 93 at 5). They state that in *DiBella*, the plaintiff's only obligation was to attend court hearings, similar to Gula's only obligation, and

15

that the "Third Circuit has specifically held that is not enough to constitute a seizure as a result of a legal proceeding." (Id.).

Gula contends that her evidence is sufficient to establish that she suffered a deprivation of liberty sufficient for her malicious prosecution claim. She states that it shows she was transported to the PSP Troop Headquarters, she was then arrested, physically seized and handcuffed, and then transported in handcuffs to another Troop. There she was processed and suspended without pay. She was then transported to her arraignment and, as a condition of her unsecured bail, she was ordered to appear at all criminal proceedings. As mentioned, Gula was detained for about one hour and 50 minutes total from the time of her arrest until her arraignment and handcuffing Gula occurred during her detainment. She also states that her liberty was restricted for over a year and a half until her trial in March 2013.

Gula relies upon the "continuing seizure" theory citing to Schneyder v. Smith, 653 F.3d 313, 321-22 (3d Cir. 2011), holding that "[w]hen the state places constitutionally significant restrictions on a person's freedom of movement for the purpose of obtaining his presence at a judicial proceeding, that person has been seized within the meaning of the Fourth Amendment." (Doc. 87 at 7-12).

In Black, 835 F.3d at 367, the Third Circuit stated that it has adopted the concept of "continuing seizure," in Schneyder, 653 F.3d at 319. The Court then stated that under this theory, "[p]re-trial restrictions of liberty aimed at

16

securing a suspect's court attendance are all 'seizures' ... [because] the difference between detention in jail, release on bond, and release subject to compliance with other conditions is in the degree of restriction on the individual's liberty, not in the kind of restriction." Id. (citing Schneyder, 653 F.3d at 320). However, in both Schneyder, 653 F.3d at 321 n.12, and Black, 835 F.3d at 367 n. 7, the Third Circuit noted that "[w]e hold open the possibility that some conditions of pre-trial release may be so insignificant as to not implicate constitutionally protected liberty interests."

In the present case, as mentioned, there was actually physical restraining of Gula as well as detainment at the time of her arrest on December 13, 2012, until her arraignment. After her arrest, Gula was handcuffed and transported by Brogan and Krawetz in a PSP vehicle to another Troop for processing and fingerprinting. Subsequently, the stated PSP officials took Gula for a preliminary arraignment in West Pittston and $7,500 unsecured bail was set. She was then released. There is no dispute that Gula was not incarcerated at any time.

This case presents a close question as to whether Gula's seizure was sufficient to constitute a Fourth Amendment violation with respect to her §1983 malicious prosecution claim. The court must only focus on Gula's seizure after her arrest. Gula's detainment by PSP officials prior to her arrest and the lodging of the charges against her "is not a basis for a malicious prosecution claim." Roberts v. Caesar's Entertainment, Inc., 72 F.Supp.3d

575, 581 (E.D.Pa. 2014).

The Third Circuit in Black, 835 F.3d at 365, discussed when an unreasonable seizure occurs for purposes of the Fourth Amendment and stated:

> An actual physical touching is not required to constitute a seizure of a person, but in the absence of a physical touching, there must be a submission to an officer's show of authority. California v. Hodari D., 499 U.S. 621, 626 (1991). As a corollary, the deprivation or restraint of a person's liberty may be physical, or it may be that "in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980) (plurality). Cf. Brendlin v. California, 551 U.S. 249, 255 (2007) ("[T]he 'coercive effect of the encounter' can be measured ... by asking whether 'a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.'") (quoting Florida v. Bostick, 501 U.S. 429, 435-36 (1991)). So, while an officer merely asking a citizen questions may not be a seizure, circumstances indicating a seizure might include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Mendenhall, 446 U.S. at 554 (plurality).

In the present case, based on all of the circumstances surrounding the incident from when Gula was arrested at the PSP Troop headquarters through the time of her arraignment, a reasonable person would have believed she was not free to leave PSP custody for one hour and 50 minutes. She can certainly be said to have submitted to the troopers' show of authority during this entire time period. "[T]o satisfy the seizure requirement of a malicious prosecution claim, the seizure must be a consequence of a legal proceeding

which necessarily means *as the result of or following* a legal proceeding that has been initiated." Wilson v. Borough, 2017 WL 467974, *6 (W.D.Pa. Feb. 3, 2017) (emphasis original). Gula was seized as a result of the commencement of a legal proceeding, i.e., when Krawetz filed the criminal complaint against her, obtained an arrest warrant and arrested her, and the ensuing period when Gula remained in the custody of Brogan and Krawetz and was not free to go was surely a consequence of the legal proceeding. During this entire time, the two defendant troopers imposed restrictions upon Gula's liberty after her arrest until her initial arraignment. Thus, based on the *Black* case, the court finds that Gula has established the fifth element of her §1983 malicious prosecution claim, and it will deny the partial motion for summary judgment of Brogan and Krawetz with respect to Count II of the amended complaint.

V.  **CONCLUSION**

For the foregoing reasons, Krawetz and Brogan's motion for partial summary judgement with respect to Count II of Gula's amended complaint, §1983 malicious prosecution claim, will be **DENIED.** An appropriate order will follow.

s/ *Malachy E. Mannion*
MALACHY E. MANNION
**United States District Judge**

**DATED: November 8, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-2210-01.wpd