UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARRIE ANN GULA, | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:14-2210 |
| v. | : | (JUDGE MANNION) |
| FRANK NOONAN, et al., | : | |
| Defendants | : | |

### MEMORANDUM

This is a civil rights action brought pursuant to 42 U.S.C. §1983, Title VII of the Civil Rights Act, and the Pennsylvania Human Relations Act ("PHRA"), by plaintiff, Carrie Ann Gula ("Gula"), in which she alleges violations of her constitutional rights arising out of her employment with the Pennsylvania State Police ("PSP") and, an alleged assault incident between Gula and her boyfriend on August 1, 2012.

Presently pending is the partial motion for summary judgment of defendants PSP Trooper Lisa Brogan ("Brogan") and Lieutenant Richard Krawetz ("Krawetz")and Lieutenant Anthony O'Hara ("O'Hara"), pursuant to Fed. R. Civ. Pro. 56, regarding Counts IV, VI and VIII of the plaintiff's amended complaint, i.e., her claims under the PHRA for sex discrimination, hostile work environment based on sex, and retaliation, to the extent Gula seeks to hold the three stated defendants individually liable. (Doc. 31). The court will also discuss Gula's PHRA claims against the PSP.

Based upon the following discussion, the partial motion for summary judgment of Brogan, Krawetz and O'Hara regarding Counts IV, VI and VIII of the amended complaint will be **GRANTED** since Gula's claims against these defendants individually under the PHRA cannot proceed. The court will also **DISMISS WITH PREJUDICE** Gula's PHRA claims against the PSP since they are barred by the Eleventh Amendment.

## II. PROCEDURAL HISTORY

Since the court stated the factual background of this case in its November 8, 2017 Memorandum, (Doc. \*\*), it will not be repeated herein.

Gula is currently proceeding on her amended complaint under §1983, Title VII and, the PHRA which was filed on August 29, 2016. (Doc. 19). The plaintiff's amended complaint is comprised of eight counts, to wit: (1) First Amendment retaliation claim and Fourteenth Amendment equal protection claim based on her sex against the individual defendants[1] in violation of 42 U.S.C. §1983; (2) malicious prosecution in violation of the Fourth Amendment and §1983 against Krawetz, and Brogan; (3) sex discrimination claims under Title VII of the Civil Rights Act, 42 U.S.C. §2000e, et seq., against PSP; (4) sex discrimination claims against all defendants under the PHRA, 43 Pa. Stat. §951, et seq.; (5) hostile work environment claim based on sex under Title VII

---

[1] The remaining individual defendants are Krawetz, Brogan, Dougalas, Hoke, and O'Hara.

against PSP; (6) hostile work environment claim based on sex against all defendants under the PHRA; (7) retaliation claim under Title VII against PSP; and (8) retaliation claim against all defendants under the PHRA.

On March 22, 2017, Brogan, Krawetz and O'Hara filed their partial motion for summary judgment of regarding plaintiff's stated PHRA claims seeking to hold them individually liable in Counts IV, VI and VIII of her amended complaint.(Doc. 31). They simultaneously filed their statement of facts with exhibits and a brief in support. (Doc. 32, Doc. 33, Docs. 37-63). The plaintiff filed her brief in opposition[2] to Brogan, Krawetz and O'Hara's motion and her response to their statement of facts on May 10, 2017. (Doc. 85, Doc. 87). Plaintiff filed exhibits in support of her brief. (Docs. 76-83). Brogan, Krawetz and O'Hara filed a reply brief on June 7, 2017. (Doc. 92). Their motion is now ripe for disposition by the court.

This court has jurisdiction over Gula's federal claims pursuant to 28 U.S.C. §1331 and §1343 as well as 42 U.S.C. §2000e–5(f)(3). The court can exercise pendent jurisdiction over the state law claims under 28 U.S.C. §1337. Venue is proper in this district under 28 U.S.C. §1391(b).

---

[2]Plaintiff's brief in opposition addresses all three pending summary judgment motions filed by defendants. (Doc. 87). Also, the exhibits filed by the parties pertain to all three pending motions.

## III. MATERIAL FACTS

The court incorporates by reference the material facts of this case from its November 8, 2017 Memorandum, (Doc. 94).[3] On December 13, 2012, Krawetz filed a criminal complaint against Gula and signed the affidavit of probable cause in support of the charges. Krawetz arrested Gula and took her into custody at PSP Hazleton. Gula was charged with the following crimes: Unlawful Use of Computer; Computer Trespass; Criminal Use of Communication Facility; False Report-Falsely Incriminate Another; False Reports–Reported Offense Did Not Occur; Unsworn Falsification to Authorities.(Doc. 81-7, Doc. 55-1). Additionally, on December 13, 2012, Gula was suspended without pay by Hoke. (Doc. 60 at 50).

Gula's criminal trial commenced on March 17, 2014. (Doc. 81-12). Prior to jury selection, the ADA withdrew Count 1, Unlawful Use of Computer and Count 3, Computer Trespass. (Doc. 81-13). At the conclusion of the trial, the jury found Gula not guilty of all charges.

On March 21, 2014, Gula was placed on restricted duty by Lieutenant Daniel J. Gentile, Jr. pending the outcome of the internal affairs investigation

---

[3]The additional material facts are derived from defendants' statement of material facts, (Doc. 32), from plaintiff's responses thereto, (Doc. 85), as well as the exhibits submitted by the parties. Also, the court limits its discussion to the material facts pertaining to plaintiff's PHRA claims against Brogan, Krawetz and O'Hara, individually. The court has omitted any legal conclusions from the material facts.

4

into her alleged false reports. Lt. Col. George Bivens approved Gula's court martial on September 30, 2014, and she was again suspended without pay.

Subsequently, Gula successfully pursued a claim against the PSP through arbitration and, she was restored to her position as a trooper with the PSP.

The following facts are also material regarding Gula's PHRA claims against Brogan, Krawetz and O'Hara. Brogan has never had supervisory authority over Gula. (Doc. 37-1, Brogan Decl., ¶3). Additionally, neither Krawetz nor O'Hara have ever held supervisory authority over Gula. (Doc. 37-2, Krawetz Decl., ¶3, Doc. 37-3, O'Hara Decl. ¶3).

## III.  STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Casualty & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At

the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249 ; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear

6

the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

"The motion for summary judgment requires Plaintiff to present evidence that there does exist a genuine issue of material fact, and Plaintiff may not rely solely on the pleadings." Isajewicz v. Bucks County Dept. Of Communications, 851 F.Supp. 161, 165 (E.D.Pa. 1994) (citing Celotex, 477 U.S. at 322).

## IV. DISCUSSION

Defendants Brogan, Krawetz and O'Hara[4] move for partial summary judgment with respect to Counts IV, VI and VIII of Gula's amended complaint, namely, her PHRA claims against the stated defendants individually. They argue that they are entitled to summary judgment on Gula's PHRA claims because they did not have supervisory authority over her.

Gula argues that she has made out aiding and abetting claims against the defendants under the PHRA. She contends that it is disputed whether the defendants had supervisory authority over her and, that disputed material

---

[4]Hereinafter, defendants Brogan, Krawetz and O'Hara shall simply be referred to as "defendants" for purposes of this memorandum unless they are specified for clarification.

7

facts exist as to whether the defendants can be held liable, individually, under the aiding and abetting theory.

### A. PHRA claims

Claims against individuals can be maintained under the PHRA under Section 955(e). The issue is whether Gula has alleged any such claims against the defendants. Section 955(a) of the PHRA specifies the following unlawful discriminatory practices:

> It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification ..., or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania:
> (a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

Section 955(d) of the PHRA prohibits retaliation and provides:

> (d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.

Section 955(e) of the PHRA also provides that the following is unlawful:

8

> For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

43 Pa. Stat. §955(a), (d)-(e).

The definition of the term "employer" in the PHRA specifically "includes the Commonwealth or any political subdivision or board, department, commission or school district thereof...." 43 Pa.Stat. §954(b). "The Pennsylvania courts have construed the language of this definition to be a waiver of sovereign immunity in actions arising under the PHRA." Mitchell v. Miller, 884 F.Supp.2d 334, 380 (W.D.Pa. 2012) (citing City of Philadelphia v. PHRC, 684 A.2d 204, 208 (Pa.Commw.Ct. 1996). Thus, "the [PSP] Defendants are not immune from liability under Pennsylvania law for actions taken in violation of the PHRA's anti-discrimination and anti-retaliation provisions." Id.

Moreover, an aiding and abetting claim against an individual employee is viable under the PHRA. See Dici v. Commonwealth of Pa., 91 F.3d 542, 552 (3d Cir. 1996); Sampson v. Methacton Sch. Dist., 88 F. Supp. 422, 446 (E.D. Pa. 2015); Nolan v. Duffy, 542 F. Supp. 2d 429, 432 (E.D. Pa. 2008); Thourot v. Monroe Career & Technical Institute, Civil No. 14-1779, at 21 n. 12, 2016 WL 6082238, *8 n. 12 (M.D.Pa. Oct. 17, 2016).

9

In her amended complaint, Gula alleges that all defendants in this case violated her rights under the PHRA. Specifically, in Count IV, she asserts sex discrimination claims against all defendants under the PHRA. In Count VI, she asserts a hostile work environment claim based on sex against all defendants under the PHRA. In Count VIII, she raises a retaliation claim against all defendants under the PHRA. Gula has also indicated in her amended complaint that her claims under the PHRA are brought against defendants, including, Brogan, Krawetz and O'Hara, in their individual capacity. (Doc. 19 at 46, 50, 55).

Since the court finds that it lacks jurisdiction over Gula's claims against the PSP under the PHRA, it must raise this issue *sua sponte*. *See* Phillip v. Atlantic City Medical Center, 861 F.Supp.2d 459, 466 (D.N.J. 2012) ("federal courts have an independent obligation to address issues of subject matter jurisdiction *sua sponte* and may do so at any stage of the litigation.") (citations omitted).

The court finds that Gula's claims under the PHRA against the PSP are barred by the Eleventh Amendment. In Mitchell, 884 F.Supp.2d at 380-81, the court addressed this issue and stated:

> The Defendants argue that Mitchell's claims against the PSP are barred by the Eleventh Amendment. As noted earlier, Pennsylvania has not waived its Eleventh Amendment immunity. 1 Pa. Cons.Stat. §2310; 42 Pa. Cons.Stat. §8521(b). Although the PHRA waives Pennsylvania's immunity from actions brought in Pennsylvania courts, federal courts throughout the Commonwealth have consistently held that the applicable

10

language of the PHRA does not operate as a waiver of Pennsylvania's Eleventh Amendment immunity. Boone v. Pennsylvania Office of Vocational Rehabilitation, 373 F.Supp.2d 484, 496 (M.D.Pa. 2005); Dennison v. Pennsylvania Dept. of Corrections, 268 F.Supp.2d 387, 405 (M.D.Pa. 2003); Moore v. Pennsylvania Dept. of Military & Veterans Affairs, 216 F.Supp.2d 446, 454 (E.D.Pa. 2002). Therefore, Mitchell's PHRA claims against the PSP are barred by the Eleventh Amendment, and this Court lacks jurisdiction to entertain them.

"In the Third Circuit, 'the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction.'" Brzozowski v. Pennsylvania Turnpike Commission, 165 F.Supp.3d 251, 258 (E.D.Pa. 2016) (citing Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 694 n. 2 (3d Cir. 1996)). "Eleventh Amendment immunity applies equally to state law claims brought in federal court pursuant to supplemental jurisdiction." Merces-Clark v. Pennsylvania, 2013 WL 6096324, *2 (E.D.Pa. Nov. 19, 2013) (citation omitted).

Thus, the court will dismiss with prejudice all of Gula's claims against the PSP under the PHRA since they are barred by the Eleventh Amendment and the court lacks jurisdiction over them. See Mitchell, 884 F.Supp.2d at 380-81; Merces-Clark, 2013 WL 6096324, *3 ("state agencies like the PSP retain their Eleventh Amendment immunity from PHRA claims brought in federal court."); Jones v. Pennsylvania State Police, 2016 WL 7404478 (E.D.Pa. Dec. 21, 2016).

The court will now discuss Gula's personal capacity claims in Counts IV, VI and VIII against moving defendants Brogan, Krawetz and O'Hara under

§955(e) of the PHRA.

Brogan, Krawetz and O'Hara argue that since it is undisputed they had no supervisory authority over Gula, "to the extent they engaged in any discriminatory activity, they cannot be held liable under the PHRA." (Doc. 33 at 9). Gula contends that a genuine issue of material fact exists as to whether O'Hara, Brogan, and Krawetz had supervisory authority over her. She also maintains that "[she] has shown how Defendants Brogan, Krawetz and O'Hara exercised supervisory authority over her employment with the Pennsylvania State Police." (Doc. 87 at 22-23).

"A plaintiff can sustain PHRA claims against a defendant in their individual capacity pursuant to Section 955(e) of the PHRA...." Brzozowski, 165 F.Supp.3d at 262-63. The Eleventh Amendment does not bar PHRA claims against the individual defendants. See Dennison, 268 F.Supp.2d 387, 405 (M.D.Pa. 2003). "The PHRA allows individual supervisors to be held liable for aiding and abetting an employer's violation of the PHRA under 43 P.S. §955(e)." Merces-Clark, 2013 WL 6096324, *3 (citation omitted). "Thus, 'an individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory pursuant to §955(e) for his own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under supervision.'" Brzozowski, 165 F.Supp.3d at 263 (quoting Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C., 20 F.Supp.2d 885, 887 (E.D.Pa. 1998)). "Courts

12

have emphasized that liability under §955(e) only extends to those who are in a supervisory role as 'only supervisors can share the discriminatory purpose and intent of the employer that is required for aiding and abetting.'" Id. (citing Holocheck v. Luzerne County Head Start, Inc., 385 F.Supp.2d 491, 497 (M.D.Pa. 2005)).

As such, if defendants Brogan, Krawetz and O'Hara were supervisors of Gula, they can be found liable under the PHRA for aiding and abetting an employer's violation of the PHRA. *See* Mitchell, 884 F.Supp.2d at 381(citing *Dici v. Commonwealth of Pa., 91 F.3d at 553* (Third Circuit held that "a supervisor who fails to stop known acts of discrimination may be held liable under the PHRA for 'aiding or abetting' the discriminatory acts")).

Gula's PHRA claims are based on alleged conduct of PSP trooper Donald C. Brackett which shall be discussed more fully when the court considers the Doc. 34 motion. Briefly, after Gula became a PSP trooper, she was assigned to the Patrol Section at the Trevose Barracks, Troop N. (Doc. 84, Ex. 9). Her supervisor at Troop N issued a report that she was subjected to sexual harassment by Brackett. (Ex. 14). (*See also* (Doc. 85 at 5-6). Gula's claims of sexual harassment were sustained by the PSP and, she received a hardship transfer to Troop M, Fern Ridge Barracks, where she was assigned to patrol under the supervision of Station Commander Sean Jennings. Thus, Gula's PHRA claims against O'Hara, Brogan, and Krawetz are premised on allegations of retaliation for her reporting the sexual

13

harassment by Brackett.

Gula's evidence, (Doc. 85 at 2), then shows as follows:

As of August 2012, Gula was the only female in her barracks at Fern Ridge. Of the handful female members of Troop M, Gula's Troop, two were subject to a court martial in recent years: Andrea Young and Carrie Gula. (Exhibit 13; Exhibit 71). Both Young and Gula's court martials were overturned through arbitration and they were awarded back pay. (Id.). Both Young and Gula have subsequently been promoted to rank of Corporal. (Exhibits 11, 13).

All three moving defendants argue that they had no supervisory authority over Gula. Specifically, Brogan and Krawetz aver in their Declarations, (Doc. 37-1, Doc. 37-2), under penalty of perjury pursuant to 28 U.S.C. §1746, as follows:

> 3. At no time during my employment with PSP did I have supervisory authority over Trooper Carrie Ann Gula.
> 4. At no time during my employment with PSP have I been permanently assigned to the same work location as Trooper Carrie Ann Gula.
> 5. I was not aware of any complaints Trooper Carrie Ann Gula made regarding Trooper Donald C. Brackett prior to the filing of the above-captioned lawsuit.
> 6. I was not aware of any IAD investigations regarding Trooper Donald C. Brackett's conduct towards Trooper Carrie Ann Gula prior to the filing of the above-captioned lawsuit.

O'Hara avers in his Declaration, (Doc. 37-3), as follows:

> 3. At no time during my employment with PSP did I have supervisory authority over Trooper Carrie Ann Gula.
> 4. At no time during my employment with PSP have I been permanently assigned to the same work location as Trooper Carrie Ann Gula.

However, Gula argues that her evidence is sufficient to show a genuine

14

issue of material fact exists as to whether the three defendants exercised control over her employment with the PSP. She basis her contention against Brogan and Krawetz on their investigations into her assault allegations against Thomas, the investigation into the alleged computer crimes against Thomas, and their role in the filing of criminal charges against her as well as their roles in her arrest. She also argues that Brogan and Krawetz exercised control over her employment based on their testimonies at her criminal trial, and their participation at both the Internal Affairs proceeding and the arbitration proceeding. (Doc. 85 at 2-3). Her evidence also shows that all of the criminal and administrative charges brought against her as a result of Brogan's and Krawetz's actions were not sustained.

> With respect to O'Hara, Gula states:
>
> O'Hara, a Lieutenant in the PSP and Department Disciplinary Officer exercised control over the terms, conditions, and privileges of Gula's employment with the Pennsylvania State Police. O'Hara determined what to charge Gula, assessed the discipline and a court martial to Gula, resulting in her suspension without pay. (O'Hara at 17; Exhibit 68). All of the discipline issued by O'Hara and the internal charges brought against Gula were not sustained. (Exhibit 71).

(Doc. 85 at 4).

Gula's evidence fails to contradict defendants' evidence showing that Brogan, Krawetz and O'Hara had no supervisory authority over her. Further, as defendants state, (Doc. 92 at 4), "the facts cited by Plaintiff support [their] contention, as they show that Brogan and Krawetz's interaction with Gula was

15

in their roles as law enforcement officers and members of the [PSP]." Nor does Gula's evidence show that any of these defendants had the power to discipline her. In fact, as defendants point out, (Id. at 5), the evidence shows "that other individuals were responsible for issuing Gula's discipline" and that "O'Hara clearly testified that individuals outside of the Department Disciplinary Office, who are in a member's chain of command, make the disciplinary decisions regarding that member." (Doc. 59, O'Hara depo., at 165).

The evidence demonstrates that the actions taken by Brogan and Krawetz were performed within their duties as a trooper and a lieutenant with the PSP assigned to investigate Gula's allegations of assault, and as members of the PSP who did not exercise supervisory power over Gula. Even though Krawetz exercised control over Brogan and directed her to conduct the initial investigation into Gula's assault allegations, Gula does not cite to any evidence to show that either defendant had supervisory authority over her. Additionally, the ultimate decision regarding whether criminal charges should be filed against Gula were made by the Luzerne County DA.

Nor does Gula point to any evidence that shows O'Hara, the Department Disciplinary Officer ("DDO"), issued discipline to her. Rather, he testified that the DDO gets notified of the circumstances when a PSP member is temporarily placed on restricted duty. O'Hara then testified:

> the [DDO], based on the set of facts and circumstances of the case, will make a recommendation to the Deputy Commissioner of Administration and Professional Responsibility that the member

> should be put on restricted duty. And the Deputy Commissioner will concur with that or not concur. And that's when the final decision rests to place a member on restricted duty. The ability to restrict somebody rests with the Deputy Commissioner. And the Deputy Commissioner will say place this member on restricted duty. That will cause the discipline office to draft correspondence which is essentially a template where you change the dates and the names. And then we'll send --- typically, we e-mail that correspondence to the troop commander. It is under that troop commander's name. The troop commander is giving the order saying you are now on restricted duty, but that authority to make that order is coming from the Deputy Commissioner....

(Doc. 59, p. 165).

Indeed, the evidence shows that on December 13, 2012, Captain Edward Hoke, the commanding officer of Troop N where Gula was stationed, issued her suspension without pay. (Doc. 45). The evidence also shows that on September 30, 2014, when O'Hara sent Gula the Notice of Discipline Penalty, (Doc. 82-9), following the internal investigation report, the Notice stated:

> Upon recommendation of the Department Discipline Officer, with the concurrence of the Deputy Commissioner of Administration and Professional Responsibility, and by the authority of the Commissioner, Trooper Carrie A. GULA shall be dismissed from the Pennsylvania State Police. Pending the deadline for filing a timely grievance and, if applicable, a subsequent decision by an arbitrator, Trooper GULA shall be placed in a suspension without pay status due to the fact that the penalty has been determined to be dismissal.

The Notice, (Id.), also showed that Captain David T. Dougalas, Commanding Officer, Troop N, Hazelton, sustained two separate allegations of misconduct against Gula, one for false reports and the second for "lying in

17

a criminal and an administrative investigation."

Additionally, while Gula has presented evidence that Brogan, Krawetz and O'Hara were involved in actions that lead to her arrest, suspension, and the internal affairs investigation, "[t]he record contains no evidence from which a reasonable trier of fact could infer that [Brogan, Krawetz and O'Hara] took actions against [Gula] for discriminatory or retaliatory reasons." Mitchell, 884 F.Supp.2d at 381. In fact, there is no evidence showing that Brogan and Krawetz even knew about Gula's sexual harassment complaints about Brackett and that their conduct was in retaliation for her complaints against Brackett. (Doc. 37-1, Doc. 37-2). *See* Mitchell, 884 F.Supp.2d at 381 (citing Krouse v. American Sterilizer Co., 126 F.3d 494, 505 (3d Cir.1997) ("recognizing that a retaliatory motive cannot be inferred where the record fails to establish a defendant's knowledge of the plaintiff's protected activity").

Further, when Brackett was disciplined based on Gula's sexual harassment complaint and placed on restricted duty status in November 2010, O'Hara had not yet become a DDO. Rather, he became a DDO in July 2012. (Doc. 59, pp. 166-172). Although O'Hara stated that he reviewed the internal investigation report regarding the sexual harassment charges against Brackett before the penalty was assessed against Gula and she was suspended without pay, (Id. at 169), the court finds no evidence, (*see generally* Doc. 59), that his recommendation to the Deputy Commissioner regarding Gula was based on retaliatory reasons due to her complaints about Brackett. *See*

Mitchell, 884 F.Supp.2d at 381 ("[PSP defendants'] decision to proceed with [plainitff's] dismissal after the conclusion of the IAD investigation provides no basis for subjecting them to personal liability." (citing Curay–Cramer v. Ursuline Academy of Wilmington, Delaware, Inc., 450 F.3d 130, 137 (3d Cir. 2006) (Third Circuit held that "an employer need not refrain from carrying out a previously reached employment decision because an employee subsequently claims to be engaging in protected activity")).

Since Gula has not presented sufficient evidence that Brogan, Krawetz and O'Hara had supervisory authority over her and, that the conduct of these defendants was based on unlawful discrimination or retaliation, or that they failed to stop discrimination against her, they cannot be held liable under the PHRA for "aiding or abetting" any discriminatory acts. Mitchell, 884 F.Supp.2d at 381.

## V. CONCLUSION

For the foregoing reasons, the motion for partial summary judgment of Krawetz, Brogan and O'Hara, (Doc. 31), with respect to Counts IV, VI and VIII of Gula's amended complaint, i.e., her claims under the PHRA for sex discrimination, hostile work environment based on sex, and retaliation, insofar as she seeks to hold the three defendants individually liable, is **GRANTED**, and judgment with respect to these claims will be entered in favor of the stated defendants. The PHRA claims against the PSP in Counts IV, VI and

VIII of Gula's amended complaint are barred by the Eleventh Amendment and they are **DISMISSED WITH PREJUDICE** since this court lacks jurisdiction over them. An appropriate order will follow.

s/ *Malachy E. Mannion*
MALACHY E. MANNION
United States District Judge

DATED: **November 9, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-2210-02-revised.wpd